UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY A. & KELLY L. SENTER, | ) | CASE NO. 5:16CV875 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| EQUIFAX INFORMATION SERVICES LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the petition of plaintiffs Jeffrey A. Senter and Kelly L. Senter (collectively "plaintiffs" or "the Senters") to compel defendant Equifax Information Services LLC ("defendant" or "EIS") to participate in arbitration. (Doc. No. 1 ["Pet."].) Defendant opposes the petition (Doc. No. 5 ["Opp'n"]), plaintiffs have filed a reply (Doc. No. 6 ["Reply"]), and defendant has filed a sur-reply. (Doc. No. 7 ["Sur-reply"].) Because plaintiffs cannot establish, as a matter of law, that plaintiffs and defendant are parties to an arbitration agreement, or that any claim plaintiffs may have against EIS is within the scope of any purported arbitration agreement, plaintiffs' petition is denied and the case is dismissed.

I. **BACKGROUND**

On April 13, 2016, plaintiffs filed the present suit seeking, as the sole remedy, an order "directing that arbitration between the Senters and [EIS] proceed in the manner provided for in the arbitration agreement[.]" (Pet. at 3[1].) The petition provides that plaintiffs each filed a claim

---
[1] All page number references are to the page identification numbers generated by the Court's electronic docketing system.

with the American Arbitration Association ("AAA") against EIS to "resolve disputes" between the parties but that, as of April 12, 2016, EIS had refused to participate in arbitration. (*Id*. ¶ 1, at 1.) In particular, plaintiffs allege that they "have disputed several tradelines contained on their [EIS] credit reports of which [EIS] has failed to maintain reasonable measures to [ensure] maximum possible accuracy of the information it reports concerning the Senters." (*Id*. ¶ 6, at 1.)

While they do not attach a copy of any agreement to their petition, they quote from what they represent is the "most recent . . . arbitration provision dated October 13, 2014" that provides for binding arbitration of any claim or dispute or controversy "regarding any aspect of [the contractual] relationship . . . including but not limited to any Claim arising from these Terms of Use or arising from Your use of the Products or this Site or any information You receive from Us . . . ." (*Id*. ¶ 7, at 2, emphasis omitted.)

Defendant filed an opposition to the petition, insisting that plaintiffs "do not, nor have they ever, had an arbitration provision with [EIS] to arbitrate disputes concerning the contents of their credit files[.]" (Opp'n at 31.) Defendant suggests that, "[i]nstead, [p]laintiffs apparently purchased or used a credit monitoring product [from another company] and the terms of use for that product may have contained an arbitration provision." (*Id*.) Defendant explains that it is a "consumer reporting agency ("CRA") as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. As a CRA, [EIS] maintains credit files for millions of consumers, including [p]laintiffs." (Doc. No. 5-1 (Declaration of Pamela Smith ["Smith Decl."]) ¶ 6.) According to defendant, "it is not party to [any] contract with the Senters[,]" and specifically, it "is not a party to any agreement that contains an arbitration provision with the Senters to arbitrate the contents of their credit files." (*Id*. ¶¶ 7-8.) EIS underscores the fact that plaintiffs

have not produced a copy of any agreement between the parties to their petition.

In their reply, plaintiffs represent that, on August 30, 2015, Jeffrey Senter visited the website www.equifax.com "to obtain copies of our credit reports as allowed by the Fair Credit Reporting Act." (Reply ¶ 2, at 40.) They maintain that, when Jeffrey Senter clicked on the button labeled "Terms of Use," the "Product Terms of Use agreement" appeared. (*Id*. ¶ 3, at 40.) They attach to the reply what they purport to be the parties' agreement. (Doc. No. 6-1 (Terms of Use ["TOU"]) at 40-64.) Included in this document is a section titled "AGREEMENT TO RESOLVE ALL DISPUTES BY BINDING INDIVIDUAL ARBITRATION." (*Id*. at 58-60, capitalization in original.)

In its sur-reply, EIS reiterates that plaintiffs have failed to produce any arbitration agreement between the parties before the Court, and the agreement referenced in the reply actually excludes from consideration any claims that a CRA, such as EIS, has issued a free credit report with inaccurate information. EIS maintains that, if anything, plaintiffs' reply merely confirms that the parties did not agree to arbitrate and the petition should be denied.

## II. STANDARD OF REVIEW

"In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Stepp v. NCR Corp.*, 494 F. Supp. 2d 826, 829 (S.D. Ohio 2007) (citing *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847 (S.D. Ohio 2003)); *see Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1062 (E.D. Ky. 2015) (quotation marks and citation omitted). It is, therefore, appropriate to review the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure.

Under Fed. Rule Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56(c)(4) further requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

As previously noted, in reviewing summary judgment motions, the Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is

entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material Fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992) (citation omitted). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*. (citation omitted).

### III. DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, manifests "a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (citing 9 U.S.C. § 2). In light of this view, the "FAA 'is at bottom a policy guaranteeing the enforcement of private contractual arrangements.'" *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).

Notwithstanding this preference for arbitration, it is fundamental that arbitration cannot

be forced on parties who do not consent to it. *See Rickard v. Teynor's Homes, Inc.*, 279 F. Supp. 2d 910, 913 (N.D. Ohio 2003) (citing, among authority, *Volt Info. Sciences, Inc. v. Bd. of Trs.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) (stating that "the FAA does not require parties to arbitrate when they have not agreed to do so")); *Stepp*, 494 F. Supp. 2d at 831 ("Courts will not enforce an arbitration agreement when the parties did not agree to the clause.") (citations omitted). Accordingly, the duty to arbitrate must derive from the parties' agreement. *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003) (citing, among authority, *Roney & Co. v. Kassab*, 981 F.2d 894, 897 (6th Cir. 1992)).

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; [sic] meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624 (citing *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)). The Sixth Circuit applies a four-prong test to determine whether to grant motions and petitions to compel arbitration:

(1) [The Court] must determine whether the parties agreed to arbitrate;

(2) [The Court] must determine the scope of that agreement;

(3) If federal statutory claims are asserted, [the Court] must consider whether Congress intended those claims to be nonarbitrable; and

(4) If [the Court] concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (numerals added) (citation omitted). "The determinative factor of whether an arbitration provision can be enforced to settle a dispute is the existence of a contract between the parties demonstrating that they intended for such to be

the case." *Raasch*, 254 F. Supp. 2d at 854 (citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000)). "That determination is made with reference to state-law contract principles." *Id*. (citing *Floss,* 211 F.3d at 314) (further citation omitted)). It is defendant's position that plaintiffs' petition must fail, as a matter of law, because they cannot satisfy either of the first two prongs of the test.

        **A.**        **EIS is not a Party to the Arbitration Agreement**

The language of the agreement[2] appended to plaintiffs' reply brief makes clear that the agreement is between plaintiff and Equifax Consumer Services LLC ("ECS"), and not the defendant in this case, EIS. The introductory language explains that the agreement "CONTAINS THE TERMS AND CONDITIONS UPON WHICH [THE BUYER OF CREDIT PRODUCTS] MAY PURCHASE AND USE" the products sold on the website visited by plaintiff Jeffrey Senter. (TOU at 42, capitalization in original.) Further, the products in question "are provided by [ECS.]" (*Id*. § 1, at 42.) While EIS is referenced in the agreement—either as an entity for which ECS "fulfill[s]" the Automatic Fraud Alert Feature or as a "Nationwide Credit Reporting Company"—the arbitration agreement only provides for binding arbitration with ECS. (*Id*. §§ 1, 35, at 42, 56.)[3] Because defendant is not a party to the underlying contract, the arbitration agreement contained therein cannot be used to compel defendant to arbitrate any disputes plaintiffs may have regarding the accuracy of their credit reports.

---

[2] Defendant complains that it is unclear when the agreement appended to the reply was in effect. Specifically, defendant argues there is nothing that establishes whether the attached agreement was in effect on August 30, 2015 (the time period at issue in this case) or on May 12, 2016 (when plaintiffs filed their reply). (Sur-reply at 67, n.1.) The Court need not resolve this issue because, as will be discussed, the agreement does not establish plaintiffs' right to compel defendant to participate in arbitration.

[3] The term "We" in the agreement refers to ECS and its suppliers. (TOU § 1, at 42-44.)

## B. Plaintiff's Dispute is Outside the Scope of the Arbitration Agreement

Even if defendant could be considered a signatory to any arbitration agreement plaintiffs may have with ECS, the present petition to compel arbitration would still be subject to dismissal because plaintiffs' claims fall outside the scope of the purported agreement. In addition to finding that a party is subject to an arbitration agreement, the Court must determine whether a "'specific dispute falls within the substantive scope of that agreement'" before it can compel an unwilling party to arbitrate. *Yaroma*, 130 F. Supp. 3d at 1061 (quoting *Javitch*, 315 F.3d at 624); *see West v. Household Life Ins*. Co., 867 N.E.2d 868, 872 (Ohio Ct. App. 2007) ("Because an agreement to arbitrate is a matter of contract, the agreement cannot be enforced when the dispute being litigated is not included in the arbitration clause.") (collecting cases). "'[I]n deciding whether an issue is within the scope of an arbitration agreement courts should ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.'" *Yaroma*, 130 F. Supp. 3d at 1065 (quoting *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007)). Any doubt regarding the scope should be resolved in favor of arbitrability. *Id*. (quotation marks and citation omitted).

In both their petition and their reply, plaintiffs emphasize that they are challenging the accuracy of the information in their credit reports. (*See* Pet. ¶ 6 ["the Senters have disputed several tradelines contained on their [EIS] credit reports of which [EIS] has failed to maintain reasonable measure to [ensure] maximum possible accuracy of the information it reports concerning the Senters"]; Reply ¶ 1, at 40 ["During the month of August 2015, my wife and I were denied credit for information contained in our [EIS] credit reports."].) Yet, the agreement

produced by plaintiffs expressly excludes such claims, providing that defendant "is the Nationwide Credit Reporting Company that maintains the credit file information used to provide the Products, except for any non-Equifax credit files that may be used in Products. *Any questions or disputes regarding the accuracy of any information in Your [EIS] Report (also used in some Products) must be directed to and will be handled by EIS*." (TOU § 31, at 56, emphasis added.)[4] Plaintiffs' recourse lies outside their arbitration agreement with ECS, and the petition to compel is subject to dismissal for this additional reason.[5]

---

[4] Section 31, entitled "QUESTIONS ABOUT YOUR CREDIT FILE OR SCORE," explains that "IF YOU BELIEVE YOUR [EIS] CREDIT REPORT CONTAINS INACCURATE OR INCOMPLETE INFORMATION, YOU MAY REQUEST, AT NO CHARGE TO YOU, THAT EIS RESEARCH THE INFORMATION CONTAINED IN YOUR [EIS] CREDIT REPORT." (*Id.*, capitalization in original.) The provision further advises that, "[t]o dispute information or place an alert in Your credit file, You may contact EIS at the number on Your [EIS] Credit Report, or You may contact Us and we will transfer or direct you to the appropriate EIS representative." (*Id.* at 56-57; *see also id.* § 4, at 43-44 ["If You believe that Your credit report contains inaccurate, non-fraudulent information, it is Your responsibility to contact the relevant credit reporting agency, and follow the procedures established by the various credit reporting agencies related to the removal of such information."].)

[5] While plaintiffs claim in conclusory fashion that defendant has "violated the Fair Credit Reporting Act, 15 U.S.C. § 1681[,]" their petition merely seeks an order compelling defendant to arbitrate. (Pet. ¶ 3.) Because their petition revolves around defendant's non-existent duty to arbitrate, it would be futile to permit plaintiffs leave to amend their petition to add factual allegations that would support possible violations under the FRCA. *See generally Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) ("leave to amend should be denied if the amendment . . . would be futile.") (quotation marks and citation omitted). Further, while pro se pleadings are entitled to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), "[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading[.]" *Brickey v. United States*, 116 Fed. Cl. 71, 75 (2014) (collecting cases); *see Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[l]iberal construction does not require a court to conjure allegations on a litigant's behalf").

## IV. Conclusion

For all of the foregoing reasons, plaintiffs' petition to compel arbitration is denied, and this case is dismissed.

**IT IS SO ORDERED**.

Dated: August 4, 2017

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**